Williams, J.
The Fidelity National Bank of Cincinnati, a banking association organized under the national bank act, became confessedly insolvent, and suspended business, on the 21st day of June, 1887; and, on the 27th day of that month, the defendant, David Armstrong, was appointed by *231 the comptroller of the currency, receiver to wind up its affairs. The franchises of the bank were adjudged forfeited, and the association dissolved, by a decree of the Circuit Court of the United States, at Cincinnati, on the 12th day of July, 1887. When the bank failed, it was indebted to Charles A. Brownell in the sum of $3,330.52, that being the balance then standing to his credit on his deposit account; which balance, on the 30th day of July, 1887, he assigned to the plaintiffs, Joseph King, M. Schroder, and Charles E. Brownell, as a security for, or payment on, a pre-existing debt which he owed them. The plaintiffs, soon afterward, presented their claim to the receiver, and on the 15th day of September, 1887, obtained from him a certificate .stating they had made satisfactory proof of the assignment, and that they were creditors oY the bank to the amount of the balance due Charles A. Brownell on the deposit account. On the 1st day of November, 1887, the comptroller of the currency declared a dividend of twenty-five per cent, on the claims of the creditors, and issued to the receiver checks for the amount of the dividend due each creditor, payable to the creditor; among them was a check for $832.63; the dividend on the claim assigned to the plaintiffs. The defendant refused to pay that dividend to the plaintiffs, who, thereupon, brought the action below, to recover it.
At the time of the failure of the Fidelity Bank, Charles A. Brownell was the owner of fifty shares of its capital stock, of the par value of one hundred dollars each, on which, under the provisions of the national bank act, he was liable for the indebtedness of the bank, to the amount of his stock, in addition to the sum invested in the stock held by him. That act provides, that “the shareholders of every national banking association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares.” U. S. Revised Statutes, Section 5151.
When the bank failed, as well as when Brownell assigned the balance due on his deposit account to the plaintiffs, he *232 was, and still is insolvent; and immediately after the transfer to the plaintiffs, of the balance due him from the bank, he made a general assignment for the benefit of his creditors. At the time the plaintiffs obtained from the receiver the certificate alluded to, he was not aware of the liability of Brownell as a stockholder of the bank, but became aware of it before the checks for the dividend, on the claims of creditors, were received; and, they were received with instructions from the comptroller to withhold them from all stockholders, and others in any way indebted to the bank. Afterward, the comptroller decided that it was necessary to enforce the stockholders liability to the full extent of one hundred dollars on each share, in order to pay the indebtedness of the bank, and made his order accordingly, declaring such necessity, and directing the defendant to collect, by suit or otherwise, from each stockholder, including Charles A. Brownell, the full amount of his liability. On the liability of Brownell, which amounts to five thousand dollars, nothing has been paid; and the receiver sought, in the action below, to have it set off against the dividend in his hands, upon the claim assigned by Brownell to the plaintiffs. The Superior Court allowed the set-off; and it is of that, the plaintiffs are here complaining.
The question in the case, therefore, is whether, upon the facts stated, the receiver is entitled to retain the amount of the dividend due on the debt which the bank owed Chas. A. Brownell at the time of its failure, and apply it on his liability as a stockholder of the bank. His right to do so, is controverted by the plaintiffs, chiefly on the ground that the cross-demands are not due to and from the parties respectively, in the same right; or. more definitely stated, that the stockholder’s liability is for the exclusive and equal benefit of the creditors, and is not a debt due the bank, or an asset of the bank; while the balance due on Brownell’s deposit account, is a debt of the bank, payable out of its assets, which he could not set off against his stockholder’s liability, and consequently, the receiver, it is claimed, cannot set off the liabitity against the debt, or dividend due upon it.
*233 There is a noticeable difference, of some importance, between the administration .of the effects of an insolvent Ohio corporation, and those of a National Banking Association. With respect to the former, the stockholder’s liability does not pass to the assignee, or receiver, as assets for administration, and no right of action can accrue thereon in his favor. It can be enforced only at the suit of the creditors; and hence, the assignee may not, lawfully, withhold from a creditor of such corporation, a dividend due him from its assets, on the ground that he is liable as a stockholder, and the creditors, on account of his insolvency, might not otherwise be able to enforce the collection of any part of his liability. The creditors, in such case, undoubtedly could, by appropriate action, reach the dividend, and compel its application to the payment of the indebtedness of the stockholder; but ,as between a stockholder and the assignee, the latter would not have the legal right to set off the former’s liability against a dividend due him as a creditor, because the assignee is wholly without authority to collect or receive any part of the amount owing by the stockholder. It is different with a receiver of a national bank, By the provisions of the national bank act, the comptroller of the currency may appoint a receiver of such banking association, whenever he is satisfied that it is in default in the payment of its circulating notes, or has become insolvent; and the receiver is required, under the direction of the comptroller, to “take possession of the books, records, and assets of every description of such association, collect all debts, dues, and claims belonging to it, * * * and may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders.” Revised Statutes of the United States, Section 5234, act of June 30,1876, Supp. U. S. Revised Statutes, 107. The receiver is authorized to collect from each stockholder, the necessary amount, up to the full extent of his liability, to meet the demand» of the creditors, and appears to be charged with that duty. The amount due from the stockholders becomes assets to be administered by him, as the other assets of the hank in his hands; and all of the assets, including the individual *234 liability of the stockholders, constitute a trust fund for the benefit of all creditors having valid claims against the bank. It therefore becomes the duty of the receiver, under the direction of the comptroller, to so administer the fund as to secure to each beneficiary his just proportion of it. In his trust capacity, he is the representative of all the creditors, and of all the stockholders, both in the collection of the assets, and their proper distribution; and the fund collected from the stockholders goes into that arising from the other assets, and is distributed in the same way to the creditors, without separation or distinction on account of the source from which it is derived. It altogether constitutes one common fund, for the equal benefit of all the creditors, according to their respective rights; so that, whatever is due from Charles A. Brownell, on his individual liability as a stockholder, is due the receiver in the same relation in which he owes the dividend on the claim of Brownell against the bank. If Brownell were solvent, so that the amount of his liability could be collected, the fund for the creditors would be increased five thousand dollars by its collection; and by the payment of the dividend to him, or his assignees, the plaintiffs, it would be reduced $832.63. If the dividend were paid to Charles A. Brownell, and not placed beyond the reach of legal process, it might be immediately subjected by the receiver, to the payment of his indebtedness on his stockholder’s liability. But, if it is required to be paid to the plaintiffs, the creditors’ fund will be permanently diminished to that amount, which, at the same time, will loose 'the amount due it from Brownell, because, on account of his insolvency nothing can be collected from him, unless the receiver is allowed' to retain the dividend now in his hands, and have Brownell’s indebtedness set off against it. While the relation of Brownell to the receiver may not, strictly speaking, be that of debtor or creditor, in the sense essential to the right of set-off at law, he was, before he assigned his claim to the plaintiffs, both a debtor to, and creditor of the fund which the receiver represents.
*235 Equity will enforce the set-off, or compensation of cross-demands, so far as they equal each other, when necessary to prevent one of the parties from losing his demand on account of the insolvency of the other. Upon the same principle, when a person entitled to share in the distribution of a trust fund is also indebted to thfe fund, and is insolvent, his indebtedness may, in equity, be set off against his distributive share; and, as a general rule, the right of set-off will not be defeated by the assignment of his claim, though made before the amount of his indebtedness, or of his distributive share, is ascertained. That application of the principle is not in conflict with the case of Sawyer v. Hoag, 17 Wall. 610, which is relied on by counsel for plaintiffs. Sawyer was indebted to the Eumbermans’ Insurance Company of Chicago, in the sum of $4,250, on his stock subscription, and after the company became insolvent by reason of its losses in the great fire in that city, bought up, for a small sum, a certificate of an adjusted loss of $5,000, against the company, and sought to have it set off against his stock liability, after the company had been adjudged a bankrupt. The court held, that the stock subscription was a trust fund for the equal benefit of all the creditors of the company, and Sawyer was not entitled to the set-off he was demanding, because, to allow it would give him an undue proportion of the fund, and deprive other creditors of their just share. It was contended in behalf of Sawyer, that the right to the set off was given by the bankrupt act, which provided that, “in all cases of mutual debts or credits between the parties, the accounts between them shall be stated, and one debt set off against the other, and the balance only shall be allowed or paid.” That provision of the bankrupt law it was held, was not intended to enlarge the doctrine of set-off; and in speaking of the right of set-off under it, Mr. Justice Mirrer said: “The debts must be mutual; must be in the same right. The case before us is not of that character. The debt which the plaintiff owed for his stock was a trust fund, devoted to the payment of all the creditors of the company. As soon as the company became insolvent and *236 this fact became known to the plaintiff, the right of set off for an ordinary debt to its full amount ceased. It became a fund belonging equally, in equity', to all the creditors and could not be appropriated by the debtor to the exclusive payment of his own claim.”
The case is essentially different. from the one we have before us. The debt which Sawyer owed the insurance company was due to a trust fund, in which all the creditors were entitled to share equally; the debt which the company owed him was one which was only entitled to receive its proportion of the fund, and not entitled to payment out of it, in full. He could not, therefore, set off the whole amount of the debt due him, against that which he owed the fund, for that would result in an unequal distribution of the fund, and enable him to obtain more of it, proportionately, than the other creditors, and more than his proper share. That was the reason for denying the set-off which he sought to have made. The reason is wholly ■wanting in the present case. Here, the set off allowed by the court below, was not of the entire claim which the bank owed Brownell, against his obligation to contribute to the trust fund on his stockholders liability, but only of his proper share and proportion of that fund, payable on his claim against the bank, as ascertained by dividend duly made and declared. The allowance of the set-off took nothing fprom the other creditors to which they were entitled, and gave nothing more to the claim of Brownell than it was justly entitled to receive—its proper share of the trust fund. It in no way interferes with the equal rights and equities of the other creditors, but on the contrary, preserves and protects their rights, and inures to their benefit, by increasing the fund. We see no valid objection to the set-off adjudged by the court below, unless the right was defeated by the assignment of Brownell’s claim against the bank, to the plaintiffs; and we think it was not. It is contended by counsel for the plaintiffs, that the liability' of Brownell as a stockholder had not accrued when the assignment to them was made, and therefore, could not be set off against the dividend due on the *237 claim. The position of counsel is, that the liability was not complete, and so not due, until the comptroller of the currency directed the receiver to enforce it, which was subsequent to the assignment. In support of this position, Kennedy v. Gibson, 8 Wall. 498, 505, is cited, in which it is said: “It is for the comptroller to decide when it is necessary to institute proceedings against the stockholders to enforce their personal liability', and whether the whole or a part, and if a part, how much, shall be collected. These questions are referred to his judgment and discretion, and his determination is conclusive. * * He may make it at such time as he may deem proper, and upon such data as shall be satisfactory to him. This action on his part is indispensible whenever the personal liability of the stockholders is sought to be enforced, and must precede the institution of suit by the receiver. The fact must be distinctly averred in all such cases, and if put in issue, must be proved.”
The power appears to be vested in the comptroller, to determine when it is necessary to collect from the stockholders, and the amount to be collected; but not to establish the liability, or determine when it accrues. The liability is complete, and subject to proceedings for its enforcement when the banking association becomes insolvent and suspends business; the comptroller simply directs at what time, and to what extent, the liability shall be enforced. It may require an investigation of the condition of the bank, its assets and liabilities, in order to determine whether resort to the stockholders is necessary, and for what amount; and while that duty is devolved upon the comptroller, and no proceeding can be instituted against the stockholders until directed by him, the maturity of the liability is not postponed until such direction is given; the proceeding only, is so postponed. By the provisions of the national bank act already quoted, the receiver is required, “under the direction of the comptroller, to collect all debts,”, etc., belonging to the banking association; and it could, with as much propriety be said, that, inasmuch as the receiver could only collect the debts due the bank, under the direction of the *238 comptroller, a matured note held by the bank at the time of its failure, does not become due until the comptroller has directed it to be sued, as, that the liability of stockholders-does not mature, until instructions are received from the comptroller to institute proceedings for its enforcement. Receivers generally institute suits under the direction of the courts by which they are appointed; and, though the order of the court authorizing the suit may be essential to its maintainance, it does not follow that the claim sued on,' matured only upon the order being made. The receiver of an insolvent national bank obtains his appointment from the comptroller of the currency, and acts under his directions and orders, which are analagous to an order of court to a receiver appointed by it.
It is well settled, that the statutory liability'- of stockholders of Ohio corporations is complete, so as to set the statute of limitations running in their favor, when the corporate property has been placed in the hands of an assignee in bankruptcy or insolvency, or of a receiver to-wind up its affairs. The exact amount of the liability of each stockholder may not then be known, and can only be ascertained in the progress of the action; yet the court may retain control of the cause and parties until the amount is-definitely fixed, and the ultimate rights of the parties are adjusted. Younglove v. Lime Co., 49 Ohio St., 663.
The liability of Charles A. Brownell as a stockholder of the Fidelity Bank, was due, we think, in every sense essential to the set-off, when the bank failed; and the assignment of his claim against it to the plaintiffs, therefore, presented no obstacle to the allowance of the set-off. Nor, did the certificate which the plaintiffs obtained from the receiver. That, gave them no new right, and amounted to nothing more than an acknowledgment of the correctness of the-claim, and its assignment to them. Their position was in no way changed on account of it.
We are of opinion the court committed no error in retaining the cause until the amount of Brownell’s liability was determined, and then setting it off against the dividend due on his claim against the bank.

The judgment is affirmed.